T.C. Memo. 2014-210

UNITED STATES TAX COURT

SCOTT M. LANGERT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19009-12.                                 Filed October 8, 2014.

Scott M. Langert, pro se.

<u>William J. Gregg</u> and <u>John D. Ellis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following deficiencies in,

and accuracy-related penalties under section 6662(a)[1] on, petitioner's Federal

income tax (tax):

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

| Year | Deficiency | Accuracy-Related Penalty Under Section 6662(a) |
|------|------------|-----------------------------------------------|
| 2008 | $23,223 | $4,644.60 |
| 2009 | 25,551 | 5,110.20 |

The issue remaining for decision is whether petitioner is entitled for his taxable year 2009 to deduct under section 166(a) a claimed bad debt. We hold that he is not.

FINDINGS OF FACT

The parties stipulated some of the facts, and those facts are so found.

Petitioner resided in Maryland at the time he filed the petition.

At the time of the trial in this case, petitioner had been involved for approximately 30 years in one or more activities involving real property (petitioner's real property activities) that included buying, selling, and/or renting certain real property and providing management services for certain rental real property.

During the approximately 30 years that petitioner was involved in petitioner's real property activities, he made loans on about six different occasions. At no time during that period did petitioner (1) advertise himself to be a money lender or (2) keep a separate office or separate books and records relating to any of the loans that he had made.

**[*3]**   Around early April 2003, petitioner borrowed $198,750 from Merrill Lynch Credit Corp. (Merrill Lynch loan) that he was to repay to that company at 5.78 percent interest over 30 years.  Petitioner secured his Merrill Lynch loan with certain rental real property that he owned at 4710 Quebec Street, College Park, Maryland.

On April 10, 2003, petitioner transferred $157,045 of the proceeds of his Merrill Lynch loan (Gordon funds in question) to Christopher Gordon (Mr. Gordon).  On the same date, Mr. Gordon and his mother, Martha D. Gordon (Ms. Gordon), signed a document titled "UNSECURED NOTE".[2]  Petitioner did not in any way secure the repayment of the Gordon funds in question, such as by requiring that Mr. Gordon or Ms. Gordon provide him with collateral.

The unsecured Gordon note stated as follows:

> FOR VALUE RECEIVED, Christopher Gordon and Martha D. Gordon promise to pay to the order of Scott M. Langert the sum of One Hundred Fifty Seven Thousand Forty Five and NO/100 DOLLARS ($157,045.00), with interest at the rate of Seven per centum per annum.

---

[2]We shall refer to the document titled "UNSECURED NOTE" that Mr. Gordon and Ms. Gordon signed on April 10, 2003, as the unsecured Gordon note. In resolving the issue presented, we accord no substantive significance to the term "unsecured Gordon note".

**[*4]**   Said principal and interest payable in monthly installments of One Thousand Forty Four and 82/100 DOLLARS, with the privilege of making larger payments in any amount.

The first of said payments to commence on May 1, 2003.  Said payments shall continue on the same day of each and every month thereafter until paid; each installment, when so paid, to be applied: first, to the payment of the interest on the amount of principal remaining unpaid, and the balance thereof credited to the principal.

And it is expressly agreed that if default be made in the payment of any one of the aforesaid installments when and as the same shall become due and payable, then, and in that event, the unpaid balance of the principal sum and accrued interest shall at the option of the holder hereof at once become and be due and payable.

The entire principal and accrued interest thereon, if not sooner paid, shall become due and payable on April 1, 2033.

The Makers jointly and severally hereby authorize and empower any Justice of the Peace or Clerk of any Court of record or any Attorney-at-law to enter judgement by confession upon the occurrence of any default hereunder by Makers against all Makers in favor of the holder hereof, for the principal balance and all accrued interest due hereunder plus costs, including reasonable attorney's fees, expressly waiving summons or other process, and do further consent to the im-mediate execution of said judgement, expressly waiving benefit of all exemption laws.

Before petitioner transferred $157,045 to Mr. Gordon on April 10, 2003, petitioner had never (1) transferred any money to Mr. Gordon or Ms. Gordon, (2) checked the credit rating of either of them, or (3) required either of those individuals to provide him with his or her financial statements showing assets,

**[*5]** income, and any other pertinent financial information. Nor had petitioner before he transferred $157,045 to Mr. Gordon on April 10, 2003, verified the source of funds from which Mr. Gordon or Ms. Gordon would be able to comply with the terms of the unsecured Gordon note that they make the payments to petitioner as set forth in that document.

Mr. Gordon used the Gordon funds in question as part of the financing for his purchase for $650,000 of certain real property at 9078 Baltimore Avenue, College Park, Maryland (Baltimore Avenue property).

On May 1, 2003, Mr. Gordon made the first of the payments to petitioner as set forth in the unsecured Gordon note. Thereafter, Mr. Gordon made approximately 27 additional monthly payments to petitioner as set forth in that document. In 2006, Mr. Gordon stopped making the payments as set forth in the unsecured Gordon note (Mr. Gordon's default). At the time in 2006 when Mr. Gordon stopped making those payments, the monthly amounts remaining to be paid as set forth in the unsecured Gordon note totaled approximately $153,000 (alleged outstanding debt).

After Mr. Gordon's default, petitioner asked Mr. Gordon orally on a number of occasions, but not in writing, to pay him all of the alleged outstanding debt. Petitioner never asked Ms. Gordon to pay him all or any part of the alleged

**[*6]** outstanding debt. After Mr. Gordon's default, petitioner did not pursue any legal remedy with respect to that default.[3]

Around October 2006, Mr. Gordon filed a petition in bankruptcy (Mr. Gordon's bankruptcy proceedings). Mr. Gordon's bankruptcy proceedings lasted for years after those proceedings were commenced. Petitioner did not file a proof of claim in Mr. Gordon's bankruptcy proceedings with respect to the alleged outstanding debt.

Sometime during 2006, the Baltimore Avenue property was the subject of a foreclosure auction and was sold as part of that auction. Petitioner had not secured the repayment of the Gordon funds in question with the Baltimore Avenue property, and he did not file a proof of claim in that foreclosure auction or contact the foreclosure trustee.

---

[3]Despite the following provision in the unsecured Gordon note, petitioner did not attempt to obtain a judgment against Mr. Gordon and/or Ms. Gordon with respect to Mr. Gordon's default:

> The Makers [Mr. Gordon and Ms. Gordon] jointly and severally hereby authorize and empower any Justice of the Peace or Clerk of any Court of record or any Attorney-at-law to enter judgement by confession upon the occurrence of any default hereunder by Makers against all Makers in favor of the holder hereof, for the principal balance and all accrued interest due hereunder plus costs, including reasonable attorney's fees, expressly waiving summons or other process, and do further consent to the immediate execution of said judgement, expressly waiving benefit of all exemption laws.

[*7]    Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2009 (2009 return).  Petitioner attached to his 2009 return Schedule C, Profit or Loss From Business (2009 Schedule C).  In petitioner's 2009 Schedule C, petitioner showed his "Principal business or profession" as "Property Management".  In that schedule, petitioner reported "Gross receipts or sales" of $1,149 and deducted, inter alia, "Other expenses" of $6,000.  Those claimed "Other expenses" included $3,000 described in petitioner's 2009 Schedule C[4] as the "Langert Loss".[5]  The "Langert Loss" was a loss of $3,000 that petitioner claimed with respect to Mr. Gordon's default on the unsecured Gordon note (2009 claimed Schedule C Gordon business loss).

On April 27, 2012, respondent issued to petitioner a notice of deficiency (notice) with respect to his taxable years 2008 and 2009.  In that notice, respondent determined, inter alia, to disallow the deduction that petitioner had claimed for the 2009 claimed Schedule C Gordon business loss of $3,000.  In support of that determination, respondent determined in the notice:

---

[4]Petitioner did not claim a "Langert Loss" in Schedule C or in any other part of the tax return that he filed for his taxable year 2008.

[5]In petitioner's 2009 Schedule C, petitioner also claimed as part of "Other expenses" $3,000 described in that schedule as the "Butcher Loss".  Petitioner conceded at trial that he is not entitled to that loss.

**[\*8]** It was determined that you are not allowed a deduction in the amount(s) and in the year(s) shown above since it has not been established that the deduction was incurred, paid, or expended for the designated purpose. Furthermore, it has not been established that you are entitled to the deduction under any Section of the Internal Revenue Code. Accordingly, your taxable income is increased for the amount(s) and year(s) shown above.

OPINION

Petitioner bears the burden of establishing that the determination in the notice that remains at issue is erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The Code and the regulations thereunder required petitioner to maintain records sufficient to establish the amount of any deduction claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

On brief, petitioner takes the position that he is entitled for his taxable year 2009 to deduct the entire amount of the alleged outstanding debt (i.e., approximately $153,000) as a so-called business bad debt.[6] In support of that position,

---

[6]The record does not establish why petitioner reported only $3,000 as the amount of the 2009 claimed Schedule C Gordon business loss and claims here the entire amount of the alleged outstanding debt (i.e., approximately $153,000) as deductible under sec. 166(a) for his taxable year 2009.

**[\*9]** petitioner argues that he "made the Loan [to Mr. Gordon] for **the sole purpose of obtaining interest income**, pursuant to the terms of the Loan."

It is respondent's position that petitioner is not entitled to a so-called business bad debt deduction, or to any other deduction, for his taxable year 2009 with respect to the alleged outstanding debt. In support of that position, respondent argues that petitioner has failed to carry his burden of establishing that the alleged outstanding debt (1) was a bona fide debt, (2) was a so-called business debt, and (3) became partially or wholly worthless during 2009, the year for which petitioner is claiming a bad debt deduction under section 166(a).

We shall assume arguendo that petitioner has carried his burden of establishing that the alleged outstanding debt is a bona fide debt within the meaning of section 166 and the regulations and the caselaw thereunder. We address whether, as respondent argues, petitioner has failed to carry his burden of establishing that the alleged outstanding debt constitutes a so-called business debt. Resolution of that question resolves whether petitioner is entitled for his taxable year 2009 to the bad debt deduction that he is claiming under section 166(a) for the alleged outstanding debt.[7]

---

[7]We address briefly whether, as respondent also argues, petitioner has satisfied his burden of establishing that the alleged outstanding debt became partially

(continued...)

**[*10]** In order for all or a portion of a debt to be deductible as a bad debt under section 166(a), the debt, inter alia, must constitute (1) a debt created or acquired in connection with a trade or business or (2) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Sec. 166(d)(2).[8] The mere fact that a taxpayer makes a loan "for **the sole purpose of obtaining interest income**," as petitioner argues on brief, does not, standing alone, lead to a finding that the loan is (1) a debt created or acquired in connection with a trade or busi-ness or (2) a debt the loss from the worthlessness of which is incurred in the tax-payer's trade or business.

Moreover, in order for a taxpayer to be entitled to a bad debt deduction under section 166(a) in connection with the trade or business of lending money, the debt must have been sustained in the course of the taxpayer's activity of making loans that was "so extensive and continuous as to elevate that activity to the status of a separate business." Imel v. Commissioner, 61 T.C. 318, 323 (1973).

---

[7](...continued)
or wholly worthless during 2009, the year for which petitioner is claiming a bad debt deduction under sec. 166(a). See infra note 10.

[8]Where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom is considered to be a loss from the sale or exchange during the taxable year of a capital asset held for not more than one year. Sec. 166(d)(1).

[*11] Petitioner testified, and we have found, that he made approximately six loans to certain individuals over the approximately 30 years during which he conducted petitioner's real property activities.[9]  In Imel, we found that "the making of eight or nine loans in the course of a 4-year period" did not "elevate[] that activity to the status of a separate business."  Id.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he was in the business of making loans at the time in 2003 that he transferred the Gordon funds in question (i.e., $157,045) to Mr. Gordon. On that record, we further find that petitioner has failed to carry his burden of establishing that the transfer of the Gordon funds in question to Mr. Gordon constituted (1) a debt created or acquired in connection with a trade or business of petitioner or (2) a debt the loss from the worthlessness of which was incurred in his trade or business.

Based upon our examination of the entire record before us, we hold that petitioner has failed to carry his burden of establishing that he is entitled for his

---

[9]Petitioner also testified, but we have not found, that his decision to transfer the Gordon funds in question to Mr. Gordon was a "business decision".  Petitioner's use of the word "business" in his testimony does not control the meaning accorded to the word "business" for tax purposes.

[*12] taxable year 2009 to a deduction under section 166(a) for the alleged outstanding debt at issue.[10]

We have considered all of the parties' respective contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[10]Assuming arguendo that the alleged outstanding debt constitutes a bona fide debt under sec. 166 and that petitioner had established that it is not a non-business debt for purposes of that section, we would find on the record before us that he has failed to carry his burden of establishing that the alleged outstanding debt became either wholly or partially worthless in taxable year 2009, the year for which petitioner is claiming the deduction under sec. 166(a). In this connection, petitioner has failed to show any identifiable events that could have formed the basis for his having reasonable grounds as of the end of 2009 for his abandoning any hope of recovering the alleged outstanding debt. See Crown v. Commissioner, 77 T.C. 582, 598 (1981).